IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED NUCLEAR CORP.,
EL PASO NATURAL GAS CO., L.L.C.,
AND HOMESTAKE MINING CO. OF
CALIFORNIA,

      Plaintiffs/Counterdefendants,

           v.

UNITED STATES OF AMERICA,

      Defendant/Counterplaintiff.

Civil Action No. 15-CV-411 KG/JHR

## CONSENT DECREE

## TABLE OF CONTENTS

I.      BACKGROUND .................................................................................... 1
II.     JURISDICTION ................................................................................... 4
III.     PARTIES BOUND ............................................................................... 4
IV.     DEFINITIONS ..................................................................................... 4
V.      STATEMENT OF PURPOSE .............................................................. 8
VI.     PAYMENT OF RESPONSE COSTS .................................................. 8
VII.     FAILURE TO COMPLY WITH CONSENT DECREE ..................... 11
VIII.    COVENANTS BY THE UNITED STATES ...................................... 13
IX.     RESERVATION OF RIGHTS BY UNITED STATES ...................... 13
X.      COVENANTS BY PLAINTIFFS/COUNTERDEFENDANTS AND SETTLING
         FEDERAL AGENCIES ...................................................................... 15
XI.     EFFECT OF SETTLEMENT/CONTRIBUTION PROTECTION ................. 17
XII.     ACCESS TO INFORMATION ........................................................... 19
XIII.    RETENTION OF RECORDS ............................................................. 21
XIV.    NOTICES AND SUBMISSIONS ....................................................... 23
XV.     RETENTION OF JURISDICTION .................................................... 25
XVI.    INTEGRATION/APPENDICES .......................................................... 25
XVII.   LODGING AND OPPORTUNITY FOR PUBLIC COMMENT ................. 25
XVIII. SIGNATORIES/SERVICE ................................................................. 26
XIX.    FINAL JUDGMENT ........................................................................... 26

# I.    BACKGROUND

A.    United Nuclear Corporation ("United Nuclear"), El Paso Natural Gas Company, L.L.C. ("EPNG"), and Homestake Mining Company of California ("Homestake") (collectively, the "Plaintiffs/Counterdefendants") filed a complaint in this matter against the United States of America pursuant to Section 107 of the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. § 9607 ("CERCLA") and federal common law, seeking reimbursement of Plaintiffs'/Counterdefendants' response costs incurred and to be incurred for response actions taken in connection with the release of hazardous substances at the San Mateo CERCLA Site in the Cibola National Forest, which is managed by the U.S. Forest Service ("USFS"), in New Mexico (the "Site").

B.    The United States filed a counterclaim in this matter pursuant to Sections 107 and 113 of CERCLA, 42 U.S.C. §§ 9607 & 9613, seeking reimbursement of response costs incurred and to be incurred for response actions taken or to be taken at or in connection with the release or threatened release of hazardous substances at the Site, and for equitable allocation of Plaintiffs'/Counterdefendants' response costs in the event the United States were to be found liable with respect to the claims alleged in the Complaint.

C.    The Site, as depicted in Appendix B to this Consent Decree, is the location of the former San Mateo Uranium Mine and includes a portion of the Lee Ranch. United Nuclear, EPNG, and Homestake all owned perfected unpatented mining claims, and mined and/or conducted assessment and exploration activities at the Site during the period between 1957 and 1988, when hazardous substances, including at least radium 228 and thorium 230, were released as a result of the mining operations performed there.

D.    In the 1980s, the United States Environmental Protection Agency ("EPA") and the New Mexico State Environmental Improvement Division began investigations at the Site. In

1

1994, the USFS finalized a Site Inspection report (the "Report") that noted high levels of radionuclides from uranium wastes at the Site. The Report also concluded that radioactive materials and other contaminants were present in the groundwater at the Site and that the hazardous substances were being transported from the Site in surface runoff. The Report contained a recommendation that Site restoration activities occur and that uranium waste rock at the Site be contained. In 2010, the USFS issued a final Engineering Evaluation/Cost Analysis ("EE/CA") report that assessed the Site hazards described in the Report and selected a removal action to address those hazards (the "Removal Action"). The Removal Action consisted of: (1) screening for contaminated materials; (2) excavating contaminated soil, rock, and mining waste; (3) consolidating the soil, rock, and mining rock in an onsite, in-ground repository; and (4) capping the repository with a vegetated soil cover.

E.  In June 2011, based on the Report and EE/CA, the USFS issued a Unilateral Administrative Order ("UAO"), pursuant to CERCLA Section 106(a), 42 U.S.C. § 9606(a), which directed United Nuclear, EPNG, and Homestake – along with another entity, Western Energy Development Corp., that is not a party to this settlement or this litigation – to implement the Removal Action. EPA reviewed and concurred in the UAO prior to its issuance.

F.  Pursuant to UAO, Plaintiffs/Counterdefendants are implementing the Removal Action, incurring, to date, approximately $8 million in costs.

G.  The Removal Action is not yet complete. Plaintiffs/Counterdefendants continue to be bound by the terms of the UAO and are obligated to perform in accordance with its terms.

H.  The United States has incurred approximately $425,000 in response costs from response actions in connection with the Site and overseeing the performance of the UAO, including approximately $25,000 in costs incurred by EPA and approximately $400,000 incurred

2

by the USDA and USFS. The United States anticipates incurring additional response costs in the future.

I.     Plaintiffs/Counterdefendants claim that the United States is liable for and should pay an equitable share of the response costs incurred and to be incurred by Plaintiffs/Counterdefendants in connection with the Site pursuant to Sections 107(a) and 113 of CERCLA, 42 U.S.C. §§ 9607(a) and 9613, alleging that the Site is located on federal land managed by the USFS and that the United States Atomic Energy Commission (of which the Department of Energy is a successor-in-interest) purchased uranium mined at the Site.

J.     The United States alleged in the Counterclaim that Plaintiffs/Counterdefendants are responsible parties pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), and thus are jointly and severally liable for all response costs incurred and to be incurred at the Site.

K.     The parties entering into this Consent Decree do not admit any liability arising out of the transactions or occurrences alleged in the Complaint or Counterclaim.

L.     The United States and Plaintiffs/Counterdefendants agree, and this Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith, that settlement of this matter without further litigation and without the admission or adjudication of any issue of fact or law is appropriate and will avoid prolonged and complicated litigation between the Parties, and that this Consent Decree is fair, reasonable, and in the public interest.

THEREFORE, with the consent of the Parties to this Decree, it is ORDERED, ADJUDGED, AND DECREED:

## II.    JURISDICTION

1.    This Court has jurisdiction over the subject matter of this action pursuant to
28 U.S.C. §§ 1331 and 1345 and 42 U.S.C. § 9607 and 9613(b) and also has personal jurisdiction
over the Parties. Solely for the purposes of this Consent Decree and the underlying Complaint
and Counterclaim, the Parties waive all objections and defenses that they may have to
jurisdiction of the Court or to venue in this District. The Parties will not challenge entry or the
terms of this Consent Decree or this Court's jurisdiction to enter and enforce this Consent
Decree. The Counterclaim constitutes an "initial action for the recovery of costs" within the
meaning of Section 113(g)(2), 42 U.S.C. § 9613(g)(2), at the Site, and any subsequent action by
the United States to recover any response costs under CERCLA Section 107, 42 U.S.C. § 9607,
for the Site, not addressed by this Consent Decree, shall be a "subsequent action" for further
response costs within the meaning of Section 113(g)(2).

## III.    PARTIES BOUND

2.    This Consent Decree is binding upon the Parties and upon their successors and
assigns. Any change in ownership or corporate or other legal status, including, but not limited to,
any transfer of assets or real or personal property, shall in no way alter the status or
responsibilities of Plaintiffs/Counterdefendants under this Consent Decree.

## IV.    DEFINITIONS

3.    Unless otherwise expressly provided in this Consent Decree, terms used in this
Consent Decree that are defined in CERCLA or in regulations promulgated under CERCLA
shall have the meaning assigned to them in CERCLA or in such regulations. Whenever terms
listed below are used in this Consent Decree or its appendices, the following definitions shall
apply:

4

"CERCLA" means the Comprehensive Environmental Response, Compensation, and Liability Act, as amended, 42 U.S.C. §§ 9601-9675.

"Consent Decree" means this Consent Decree and all appendices attached hereto. In the event of conflict between this Consent Decree and any appendix, this Consent Decree shall control.

"Day" or "day" means a calendar day. In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal or State holiday, the period shall run until the close of business on the next working day.

"DOJ" means the U.S. Department of Justice and its successor departments, agencies, or instrumentalities.

"EE/CA" means the 2010 Engineering Evaluation/Cost Analysis that assessed the Site hazards described in the Report and identified the Removal Action that was required to be completed pursuant to the UAO.

"Effective Date" means the date upon which approval of this Consent Decree is recorded on the Court's docket.

"EPA" means the U.S. Environmental Protection Agency and its successor departments, agencies, or instrumentalities.

"EPA Hazardous Substance Superfund" means the Hazardous Substance Superfund established by the Internal Revenue Code, 26 U.S.C. § 9507.

"Interest" means interest at the rate specified for interest on investments of the EPA Hazardous Substance Superfund established by 26 U.S.C. § 9507, compounded annually on October 1 of each year, in accordance with 42 U.S.C. § 9607(a). The applicable rate of interest shall be the rate in effect at the time the interest accrues. The rate of interest is

subject to change on October 1 of each year. Rates are available online at https://www.epa.gov/superfund/superfund-interest-rates.

"Paragraph" means a portion of this Consent Decree identified by an Arabic numeral or an upper or lower case letter.

"Parties" means the United States, including the Settling Federal Agencies, and Plaintiffs/Counterdefendants.

"Plaintiffs/Counterdefendants" means EPNG, Homestake, and United Nuclear.

"Plantiffs'/Counterdefendants' Response Costs" means costs incurred for activities undertaken by Plaintiffs/Counterdefendants necessary to comply with the terms of the UAO.

"Post-Certification Operation and Maintenance" means all activities conducted by the USFS after issuance of the notice of completion of the UAO that are necessary to operate, maintain, and monitor the effectiveness of the Removal Action.

"Removal Action" means the actions Plaintiffs/Counterdefendants were ordered to take under the terms of the UAO.

"Report" means the 1994 USFS Site Inspection Report.

"Response Costs" means all costs, including but not limited to direct and indirect costs, that the United States has incurred through the Effective Date at or in connection with the Site or will incur after the Effective Date in connection with the Work and Post-Certification Operation and Maintenance, plus Interest on all such costs, pursuant to 42 U.S.C. § 9607(a).

"Section" means a portion of this Consent Decree identified by a Roman numeral.

"Settling Federal Agencies" means the United States Forest Service ("USFS"), the United States Department of Agriculture ("USDA"), and the United States Department of Energy ("DOE").

"Site" means the San Mateo Mine Site in Cibola County, New Mexico, within the Grants Uranium Region, and is further described as the NE¼ of Section 30, SE¼ of the SE¼ of Section 19, and the Federal portion of the West ½ of the NW¼ of Section 29, Township 13 North, Range 8 West of the New Mexico Principal Meridian, as shown on the map included in Appendix B.

"State" means the State of New Mexico.

"Statement of Work" means the statement of work for performance of the Removal Action. The Statement of Work is Appendix A to the UAO.

"UAO" means the Unilateral Administrative Order issued to Plaintiffs/Counterdefendants in June of 2011, pursuant to which Plaintiffs/Counterdefendants are performing the Removal Action at the Site.

"United States" means the United States of America and each department, agency, and instrumentality of the United States, including EPA, the DOE, the USDA, and the USFS.

"USDA" means the United States Department of Agriculture and its successor departments, agencies, or instrumentalities.

"USFS" means the United States Forest Service and its successor departments, agencies, or instrumentalities.

"Waste Material" shall mean (1) any "hazardous substance" under Section 101(14) of CERCLA, 42 U.S.C. § 9601(14); (2) any pollutant or contaminant under Section 101(33)

of CERCLA, 42 U.S.C. § 9601(33); and (3) any "solid waste" under Section 1004(27) of RCRA, 42 U.S.C. § 6903(27).

"Work" means (a) all activities and obligations undertaken by Plaintiffs/Counterdefendants on or before the Effective Date to implement the requirements of the UAO and after the Effective Date to implement those requirements of the UAO identified in the Statement of Work and (b) all activities and obligations Plaintiffs/Counterdefendants are required to perform in order to implement this Consent Decree, except the activities required under Section XIII (Retention of Records).

## V. STATEMENT OF PURPOSE

4.     The objectives of the Parties in entering into this Consent Decree are to resolve the claims of the United States for Response Costs and the Work, and to resolve the claims of Plaintiffs/Counterdefendants for Plaintiffs'/Counterdefendants' Response Costs that have been or could have been asserted against the United States, as provided in this Consent Decree.

## VI. PAYMENT OF RESPONSE COSTS

5.     Payment by Plaintiffs/Counterdefendants for Response Costs. Within 30 days after the Effective Date, Plaintiffs/Counterdefendants shall pay to EPA $25,000, plus an additional sum for Interest on that amount calculated from the date of lodging of the Consent Decree through the date of payment.

6.     Plaintiffs/Counterdefendants shall make payments by Fedwire Electronic Funds Transfer EFT to the U.S. Department of Justice account, in accordance with instructions provided to Plaintiffs/Counterdefendants by the Financial Litigation Unit (FLU) of the U.S. Attorney's Office for the District of New Mexico after the Effective Date. The payment instructions provided by the FLU will include a Consolidated Debt Collection System (CDCS)

number, which shall be used to identify all payments required to be made in accordance with this

Consent Decree. The FLU will provide the payment instructions to:

**For EPNG:**

> Daniel J. Schnee
> Assistant General Counsel
> Kinder Morgan, Inc.
> Two North Nevada
> Colorado Springs, CO 80903
> Telephone: (719) 520-4337
> Email: Daniel_Schnee@kindermorgan.com

**For Homestake:**

> Peter Webster
> General Counsel United States
> Barrick Gold of North America, Inc.
> 310 South Main Street, SLC, UT 84101
> Telephone: 801-990-3745
> Email: pwebster@barrick.com

**For United Nuclear:**

> Kirk R. Macfarlane
> Executive Counsel – Property and Risk Management
> Global Operation, Environment, Health & Safety
> GE
> 640 Freedom Business Center
> King of Prussia, PA 19406
> Telephone: (610) 992-7976
> Email: kirk.macfarlane@ge.com

on behalf of Plaintiffs/Counterdefendants. Plaintiffs/Counterdefendants may change the

individuals to receive payment instructions on their behalf by providing written notice of such

change to DOJ and EPA in accordance with Section XIV (Notices and Submissions).

7.    <u>Deposit of Payment</u>. The total amount to be paid pursuant to Paragraph 5 shall be

deposited by EPA in the EPA Hazardous Substance Superfund.

8.    <u>Notice of Payment</u>. At the time of payment, Plaintiffs/Counterdefendants shall

send notice that payment has been made (a) to EPA in accordance with Section XIV (Notices

and Submissions); (b) to DOJ in accordance with Section XIV (Notices and Submissions); and (c) to the EPA Cincinnati Finance Center by email or by regular mail at:

| | |
|---|---|
| **Email**: | cinwd_acctsreceivable@epa.gov |
| **Regular mail**: | EPA Cincinnati Finance Center<br>26 W. Martin Luther King Drive<br>Cincinnati, Ohio 45268 |

Such notice shall reference the CDCS Number, Site/Spill ID Number A6AN, and DJ Numbers 90-11-3-11380/1 and 90-11-6-19727.

9.     Payment by Settling Federal Agencies.

a.     As soon as reasonably practicable after the Effective Date, and consistent with Paragraph 9.c, the United States, on behalf of Settling Federal Agencies, shall pay to Plaintiffs/Counterdefendants, a total sum of $1.595 million by Automated Clearinghouse (ACH) Electronic Funds Transfer in accordance with instructions provided by Plaintiffs/Counterdefendants.

b.     Interest. In the event that any payment required by Paragraph 9.a is not made within 120 days after the Effective Date, the United States, on behalf of Settling Federal Agencies, shall pay Interest on the unpaid balance, with such Interest commencing on the 121st day after the Effective Date and accruing through the date of the payment.

c.     The Parties to this Consent Decree recognize and acknowledge that the payment obligations of Settling Federal Agencies under this Consent Decree can only be paid from appropriated funds legally available for such purpose. Nothing in this Consent Decree shall be interpreted or construed as a commitment or requirement that any Settling Federal Agency obligate or pay funds in contravention of the Anti-Deficiency Act, 31 U.S.C. § 1341, or any other applicable provision of law.

## VII.   FAILURE TO COMPLY WITH CONSENT DECREE

10.   <u>Interest on Late Payments</u>. If Plaintiffs/Counterdefendants fail to make any payment required by Paragraph 5 (Payment by Plaintiffs/Counterdefendants for Response Costs) by the required due date, Interest shall continue to accrue on the unpaid balance through the date of payment.

11.   <u>Stipulated Penalty.</u>

a.   If any amounts due under Paragraph 5 (Payment by Plaintiffs/Counterdefendants for Response Costs) are not paid by the required due date, Plaintiffs/Counterdefendants shall be in violation of this Consent Decree and shall pay, as a stipulated penalty, in addition to the Interest required by Paragraph 10 (Interest on Late Payments), $100 per violation per day that such payment is late.

b.   Stipulated penalties are due and payable within 30 days after the date of the demand for payment of the penalties by EPA. All payments to EPA under this Paragraph shall be identified as "stipulated penalties" and shall be made by Fedwire EFT to:

> Federal Reserve Bank of New York
> ABA = 021030004
> Account = 68010727
> SWIFT address = FRNYUS33
> 33 Liberty Street
> New York, NY 10045
> Field Tag 4200 of the Fedwire message should read "D 68010727
>  Environmental Protection Agency"

and shall reference the CDCS Number, Site/Spill ID Number A6AN, and DJ Numbers 90-11-3-11380/1 and 90-11-6-19727.

c.   At the time of payment, Plaintiffs/Counterdefendants shall send notice that payment has been made to EPA and DOJ as provided in Paragraph 8 (Notice of Payment).

d.      Stipulated penalties shall accrue as provided in this Paragraph regardless of whether EPA has notified Plaintiffs/Counterdefendants of the violation or made a demand for payment, but need only be paid upon demand. All penalties shall begin to accrue on the day after payment is due or the day a violation occurs, and shall continue to accrue through the date of payment. Nothing in this Consent Decree shall prevent the simultaneous accrual of separate penalties for separate violations of this Consent Decree.

12.     If EPA brings an action to enforce this Consent Decree, Plaintiffs/Counterdefendants shall reimburse the United States for all costs of such action, including but not limited to costs of attorney time.

13.     Payments made under this Section shall be in addition to any other remedies or sanctions available to EPA by virtue of Plaintiffs'/Counterdefendants' failure to comply with the requirements of this Consent Decree.

14.     The obligations of Plaintiffs/Counterdefendants to pay amounts owed to the United States under this Consent Decree are joint and several. In the event of the insolvency of any Plaintiff/Counterdefendant or the failure by any Plaintiff/Counterdefendant to make the payments required under this Consent Decree, the remaining Plaintiffs/Counterdefendants shall be responsible for such payments.

15.     Notwithstanding any other provision of this Section, the United States may, in its unreviewable discretion, waive payment of any portion of the stipulated penalties that have accrued pursuant to this Consent Decree. Payment of stipulated penalties shall not excuse Plaintiffs/Counterdefendants from payment as required by Section VI (Payment of Response Costs) or from performance of any other requirements of this Consent Decree.

## VIII.   COVENANTS BY THE UNITED STATES

16.   <u>Covenants for Plaintiffs/Counterdefendants by United States</u>. Except as specifically provided in Section IX (Reservation of Rights by United States), the United States covenants not to sue or to take administrative action against Plaintiffs/Counterdefendants pursuant to Sections 106 and 107(a) of CERCLA, 42 U.S.C. §§ 9606 and 9607(a), for the Work and Response Costs. With respect to Response Costs, the covenant takes effect upon the Effective Date. With respect to the Work, the covenant takes effect upon the date the USFS issues the notice of completion of the UAO, in accordance with Paragraph 48 of the UAO. These covenants are conditioned upon the satisfactory performance by Plaintiffs/Counterdefendants of their obligations under this Consent Decree and the UAO. These covenants extend only to Plaintiffs/Counterdefendants and do not extend to any other person.

17.   <u>Covenant for Settling Federal Agencies by EPA</u>. Except as specifically provided in Section IX (Reservation of Rights by United States), EPA covenants not to take administrative action against Settling Federal Agencies pursuant to Sections 106 and 107(a) of CERCLA, 42 U.S.C. §§ 9606 and 9607(a), for the Work and Response Costs. This covenant takes effect upon the Effective Date. This covenant is conditioned upon the satisfactory performance by Settling Federal Agencies of their obligations under this Consent Decree. This covenant extends only to Settling Federal Agencies and does not extend to any other person.

## IX.   RESERVATION OF RIGHTS BY UNITED STATES

18.   The United States reserves, and this Consent Decree is without prejudice to, all rights against Plaintiffs/Counterdefendants, and EPA and the federal natural resource trustees reserve, and this Consent Decree is without prejudice to, all rights against Settling Federal Agencies, with respect to all matters not expressly included within Section VIII (Covenants by the United States). Notwithstanding any other provision of this Consent Decree, the United

13

States reserves all rights against Plaintiffs/Counterdefendants, and EPA and the federal natural resource trustees reserve, and this Consent Decree is without prejudice to, all rights against Settling Federal Agencies, with respect to:

a. liability for failure by Plaintiffs/Counterdefendants or Settling Federal Agencies to meet a requirement of this Consent Decree;

b. liability arising from the past, present, or future disposal, release, or threat of release of Waste Material outside of the Site;

c. liability based on the ownership of the Site by Plaintiffs/Counterdefendants or Settling Federal Agencies when such ownership commences after signature of this Consent Decree by Plaintiffs/Counterdefendants or Settling Federal Agencies;

d. liability based on the operation of the Site by Plaintiffs/Counterdefendants when such operation commences after signature of this Consent Decree by Plaintiffs/Counterdefendants and does not arise solely from Plaintiffs'/Counterdefendants' performance of the Work and liability based on the operation of the Site by Settling Federal Agencies when such operation commences after signature of this Consent Decree by Settling Federal Agencies;

e. liability based on Plaintiffs'/Counterdefendants' or Settling Federal Agencies' transportation, treatment, storage, or disposal, or arrangement for transportation, treatment, storage, or disposal of Waste Material at or in connection with the Site, other than as provided in the EE/CA, the UAO, or otherwise ordered by the United States, after signature of this Consent Decree by Plaintiffs/Counterdefendants or Settling Federal Agencies;

f.      liability for damages for injury to, destruction of, or loss of natural

resources, and for the costs of any natural resource damage assessments;

g.      criminal liability; and

h.      liability for violations of federal or state law that occur during or after

implementation of the Work.

## X.      COVENANTS BY PLAINTIFFS/COUNTERDEFENDANTS AND SETTLING FEDERAL AGENCIES

19.     <u>Covenant by Plaintiffs/Counterdefendants</u>. Plaintiffs/Counterdefendants covenant

not to sue and agree not to assert any claims or causes of action against the United States with

respect to the Work, past response actions regarding the Site, Response Costs,

Plaintiffs'/Counterdefendants' Response Costs, and this Consent Decree, including but not

limited to:

a.      any direct or indirect claim for reimbursement from the EPA Hazardous

Substance Superfund based on Sections 106(b)(2), 107, 111, 112, or 113 of CERCLA,

42 U.S.C. §§ 9606(b)(2), 9607, 9611, 9612, or 9613, or any other provision of law;

b.      any claim arising out of response actions at or in connection with the Site,

including any claim under the United States Constitution, the New Mexico Constitution,

the Tucker Act, 28 U.S.C. § 1491, the Equal Access to Justice Act, 28 U.S.C. § 2412, or

at common law; or

c.      any claim pursuant to Sections 107 or 113 of CERCLA, 42 U.S.C.

§§ 9607 or 9613, Section 7002(a) of RCRA, 42 U.S.C. § 6972(a), or state law.

20.     <u>Covenant by Settling Federal Agencies</u>. Settling Federal Agencies agree not to

assert any direct or indirect claim for reimbursement from the EPA Hazardous Substance

Superfund through CERCLA Sections 106(b)(2), 107, 111, 112, or 113, or any other provision of

law with respect to the Work, past response actions regarding the Site, Response Costs, Plaintiffs'/Counterdefendants' Response Costs, and this Consent Decree. This covenant does not preclude demand for reimbursement from the Superfund of costs incurred by a Settling Federal Agency in the performance of its duties (other than pursuant to this Consent Decree) as lead or support agency under the National Contingency Plan.

21.    Except as provided in Paragraph 23 (claims against other PRPs) and Paragraph 30 (res judicata and other defenses), the covenants in this Section shall not apply in the event the United States brings a cause of action or issues an order pursuant to any of the reservations in Section IX (Reservations of Rights by United States), other than in Paragraph 18.a (liability for failure to meet a requirement of the Consent Decree), 18.g (criminal liability), or 18.h (violations of federal/state law during or after implementation of the Work) but only to the extent that Plaintiffs'/Counterdefendants' claims arise from the same response action or response costs that the United States is seeking pursuant to the applicable reservation.

22.    Nothing in this Consent Decree shall be deemed to constitute approval or preauthorization of a claim within the meaning of Section 111 of CERCLA, 42 U.S.C. § 9611, or 40 C.F.R. 300.700(d).

23.    Plaintiffs/Counterdefendants agree not to assert any claims and to waive all claims or causes of action (including but not limited to claims or causes of action under Sections 107(a) and 113 of CERCLA) that they may have for response costs relating to the Site against any person who is not a party to this Consent Decree and is a potentially responsible party under CERCLA at the Site. This waiver shall not apply with respect to any defense, claim, or cause of action that a Plaintiff/Counterdefendant may have against any person if such person asserts a claim or cause of action relating to the Site against such Plaintiff/Counterdefendant.

24.     Plaintiffs/Counterdefendants reserve, and this Consent Decree is without
prejudice to, claims against the United States, subject to the provisions of Chapter 171 of Title 28
of the United States Code, and brought pursuant to any statute other than CERCLA or RCRA
and for which the waiver of sovereign immunity is found in a statute other than CERCLA or
RCRA, for money damages for injury or loss of property or personal injury or death caused by
the negligent or wrongful act or omission of any employee of the United States, as that term is
defined in 28 U.S.C. § 2671, while acting within the scope of his or her office or employment
under circumstances where the United States, if a private person, would be liable to the claimant
in accordance with the law of the place where the act or omission occurred. However, the
foregoing shall not include any claim based on the United States' selection of response actions,
or the oversight or approval of Plaintiffs'/Counterdefendants' plans, reports, other deliverables,
or activities.

## XI.     EFFECT OF SETTLEMENT/CONTRIBUTION PROTECTION

25.     Except as provided in Paragraph 23 (claims against other PRPs), nothing in this
Consent Decree shall be construed to create any rights in, or grant any cause of action to, any
person not a Party to this Consent Decree. Except as provided in Section X (Covenants by
Plaintiffs/Counterdefendants and Settling Federal Agencies), each of the Parties expressly
reserves any and all rights (including, but not limited to, under Section 113 of CERCLA,
42 U.S.C. § 9613), defenses, claims, demands, and causes of action that it may have with respect
to any matter, transaction, or occurrence relating in any way to the "matters addressed" against
any person not a Party hereto. Nothing in this Consent Decree diminishes the right of the United
States, pursuant to Section 113(f)(2) and (3) of CERCLA, 42 U.S.C. § 9613(f)(2)-(3), to pursue

any such persons to obtain additional response costs or response action and to enter into settlements that give rise to contribution protection pursuant to Section 113(f)(2).

26.     The Parties agree, and by entering this Consent Decree this Court finds, that this Consent Decree constitutes a judicially-approved settlement pursuant to which Plaintiffs/Counterdefendants and Settling Federal Agencies have, as of the Effective Date, resolved their liability within the meaning of Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2), and are entitled, as of the Effective Date, to protection from contribution actions or claims as provided by Section 113(f)(2) of CERCLA, or as may be otherwise provided by law, for the matters addressed in this Consent Decree.

27.     For purposes of this Consent Decree, "matters addressed" means the Work, Response Costs, and Plaintiffs'/Counterdefendants' Response Costs; provided, however, that if the United States exercises rights under the reservations in Section IX (Reservations of Rights by United States), other than in Paragraph 18.a (liability for failure to meet a requirement of the Consent Decree) or 18.g (criminal liability), or 18.h (violations of federal/state law during or after implementation of the Work), the "matters addressed" in this Consent Decree will no longer include those response costs or response actions that are within the scope of the exercised reservation.

28.     The Parties further agree, and by entering this Consent Decree this Court finds, that the complaint filed by the Plaintiffs/Counterdefendants, and the counterclaim filed by the United States, in this action are civil actions within the meaning of Section 113(f)(1) of CERCLA, 42 U.S.C. § 9613(f)(1), and that this Consent Decree constitutes a judicially-approved settlement pursuant to which each Plaintiff/Counterdefendant and each Settling Federal Agency

has, as of the Effective Date, resolved liability to the United States within the meaning of Section 113(f)(3)(B) of CERCLA, 42 U.S.C. § 9613(f)(3)(B).

29.     Each Plaintiff/Counterdefendant shall, with respect to any suit or claim brought by it for matters related to this Consent Decree, notify the United States in writing no later than 60 days prior to the initiation of such suit or claim. Each Plaintiff/Counterdefendant also shall, with respect to any suit or claim brought against it for matters related to this Consent Decree, notify the United States in writing within 10 days after service of the complaint or claim upon it. In addition, each Plaintiff/Counterdefendant shall notify the United States within 10 days after service or receipt of any Motion for Summary Judgment, and within 10 days after receipt of any order from a court setting a case for trial, for matters related to this Consent Decree.

30.     In any subsequent administrative or judicial proceeding initiated by the United States for injunctive relief, recovery of response costs, or other relief relating to the Site, Plaintiffs/Counterdefendants (and, with respect to a State action, Settling Federal Agencies) shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States in the subsequent proceeding were or should have been brought in the instant case; provided, however, that nothing in this Paragraph affects the enforceability of the Covenants by the United States set forth in Section VIII.

## XII.     ACCESS TO INFORMATION

31.     Plaintiffs/Counterdefendants shall provide to the United States, upon request, copies of all records, reports, documents, and other information (including records, reports, documents, and other information in electronic form) (hereinafter referred to as "Records") within their possession or control or that of their contractors or agents relating to activities at the

Site including, but not limited to, sampling, analysis, chain of custody records, manifests, trucking logs, receipts, reports, sample traffic routing, correspondence, or other documents or information regarding the Site.

      32.    <u>Privileged and Protected Claims.</u>

      a.    Plaintiffs/Counterdefendants may assert that all or part of a Record is privileged or protected as provided under federal law, provided they comply with Paragraph 32.b, and except as provided in Paragraph 32.c.

      b.    If Plaintiffs/Counterdefendants assert a claim of privilege or protection, they shall provide the United States with the following information regarding such Record: its title; its date; the name, title, affiliation (e.g., company or firm), and address of the author, each addressee, and of each recipient; a description of the Record's contents; and the privilege or protection asserted. If a claim of privilege or protection applies only to a portion of a Record, Plaintiffs/Counterdefendants shall provide the Record to the United States in redacted form to mask the privileged or protected information only. Plaintiffs/Counterdefendants shall retain all Records that they claim to be privileged or protected until the United States has had a reasonable opportunity to dispute the privilege or protection claim and any such dispute has been resolved in the Plaintiffs'/Counterdefendants' favor.

      c.    Plaintiffs/Counterdefendants may make no claim of privilege or protection regarding:

      (1)    any data regarding the Site, including but not limited to, all sampling, analytical, monitoring, hydrogeologic, scientific, chemical,

radiological, or engineering data, or the portion of any other Record that evidences conditions at or around the Site; or

(2)     the portion of any Record that Plaintiffs/Counterdefendants are required to create or generate pursuant to this Consent Decree.

33.     <u>Business Confidential Claims</u>. Plaintiffs/Counterdefendants may assert that all or part of a Record submitted to the United States under this Section or Section XIII (Retention of Records) is business confidential to the extent permitted by and in accordance with Section 104(e)(7) of CERCLA, 42 U.S.C. § 9604(e)(7), and 40 C.F.R. 2.203(b). Plaintiffs/Counterdefendants shall segregate and clearly identify all Records or parts thereof submitted under this Consent Decree for which Plaintiffs/Counterdefendants assert a business confidentiality claim. Records submitted to the United States determined to be confidential by the United States will be accorded the protection specified in 40 C.F.R. Part 2, Subpart B. If no claim of confidentiality accompanies Records when they are submitted to the United States, or if the United States has notified Plaintiffs/Counterdefendants that the Records are not confidential under the standards of Section 104(e)(7) of CERCLA or 40 C.F.R. Part 2 Subpart B, the public may be given access to such Records without further notice to Plaintiffs/Counterdefendants.

34.     Notwithstanding any provision of this Consent Decree, the United States retains all of its information gathering and inspection authorities and rights, including enforcement actions related thereto, under CERCLA, RCRA, and any other applicable statutes or regulations.

## XIII.   RETENTION OF RECORDS

35.     Until five (5) years after the issuance of the notice of completion of the UAO, each Plaintiff/Counterdefendant shall preserve and retain all non-identical copies of Records now in its possession or control, or that come into its possession or control, that relate in any manner

to its liability under CERCLA with respect to the Site, provided, however, that Plaintiffs/Counterdefendants who are potentially liable as owners or operators of the Site must retain, in addition, all Records that relate to the liability of any other person under CERCLA with respect to the Site. Each of the above record retention requirements shall apply regardless of any corporate retention policy to the contrary.

36. After the conclusion of the document retention period in the preceding paragraph, Plaintiffs/Counterdefendants shall notify the United States at least 90 days prior to the destruction of any such Records, and, upon request by the United States, except as provided in Paragraph 32 (Privileged and Protected Claims), Plaintiffs/Counterdefendants shall deliver any such Records to EPA.

37. Each Plaintiff/Counterdefendant certifies individually that, to the best of its knowledge and belief, after thorough inquiry, it has not altered, mutilated, discarded, destroyed or otherwise disposed of any Records relating to its potential liability regarding the Site since notification of potential liability by the United States or the State and that it has fully complied with any and all the United States and State requests for information regarding the Site pursuant to Sections 104(e) and 122(e)(3)(B) of CERCLA, 42 U.S.C. §§ 9604(e) and 9622(e)(3)(B), Section 3007 of RCRA, 42 U.S.C. § 6927, and state law.

38. The United States acknowledges that each Settling Federal Agency (a) is subject to all applicable Federal record retention laws, regulations, and policies; and (b) has certified that it has fully complied with any and all the United States and State requests for information regarding the Site pursuant to Sections 104(e) and 122(e)(3)(B) of CERCLA, 42 U.S.C. §§ 9604(e) and 9622(e)(3)(B), Section 3007 of RCRA, 42 U.S.C. § 6927, and state law.

## XIV.  NOTICES AND SUBMISSIONS

39.     Whenever, under the terms of this Consent Decree, notice is required to be given

or a document is required to be sent by one party to another, it shall be directed to the individuals

at the addresses specified below, unless those individuals or their successors give notice of a

change to the other Parties in writing. Except as otherwise provided, notice to a Party by email

(if that option is provided below) or by regular mail in accordance with this Section satisfies any

notice requirement of the Consent Decree regarding such Party.

**As to the United States:**

**As to DOJ by email:**
eescasemanagement.enrd@usdoj.gov

**As to DOJ by mail:**
EES Case Management Unit
U.S. Department of Justice
Environment and Natural Resources Division
P.O. Box 7611
Washington, D.C.  20044-7611
Re: DJ #90-11-3-11380/1

**And:**

Chief
U.S. Department of Justice
Environment and Natural Resources Division
Environmental Defense Section
P.O. Box 7611
Washington, D.C.  20044-7611
Re: DJ #90-11-6-19727

**As to EPA:**

Pamela Travis
Assistant Regional Counsel
U.S. Environmental Protection Agency, Region VI
1445 Ross Avenue, Suite 1200 6RC-S
Dallas, TX  75202
travis.pamela@epa.gov

**As to the USDA/USFS:**

> Kenneth Paur
> Acting Regional Attorney
> USDA Office of the General Counsel
> 740 Simms. St. #309
> Golden, CO 80401
> kenneth.paur@usda.gov

**As to the DOE:**

> Bettina Mumme
> U.S. Department of Energy
> Office of the General Counsel
> Litigation Division
> FORS, Room 6H-065
> 1000 Independence Ave, SW
> Washington, DC 20585
> bettina.mumme@hq.doe.gov

**As to Plaintiffs/Counterdefendants:**

**As to EPNG:**

> Daniel J. Schnee
> Assistant General Counsel
> Kinder Morgan, Inc.
> Two North Nevada
> Colorado Springs, CO 80903
> Telephone: (719) 520-4337
> Email: Daniel_Schnee@kindermorgan.com

**As to Homestake:**

> Peter Webster
> General Counsel United States
> Barrick Gold of North America, Inc.
> 310 South Main Street, SLC, UT 84101
> Telephone: 801-990-3745
> Email: pwebster@barrick.com

**As to United Nuclear:**

> Kirk R. Macfarlane
> Executive Counsel – Property and Risk Management
> Global Operation, Environment, Health & Safety
> GE
> 640 Freedom Business Center

King of Prussia, PA 19406
Telephone: (610) 992-7976
Email: kirk.macfarlane@ge.com

## XV.   RETENTION OF JURISDICTION

40.      This Court shall retain jurisdiction over this matter for the purpose of interpreting and enforcing the terms of this Consent Decree.

## XVI.   INTEGRATION/APPENDICES

41.      This Consent Decree and its appendices constitute the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in this Consent Decree. The Parties acknowledge that there are no representations, agreements, or understandings relating to the settlement other than those expressly contained in this Consent Decree. The following appendices are attached to and incorporated into this Consent Decree: "Appendix A" is a map of the Site and "Appendix B" is the UAO, including its appendices.

## XVII.   LODGING AND OPPORTUNITY FOR PUBLIC COMMENT

42.      This Consent Decree shall be lodged with the Court for a period of at least 30 days for public notice and comment. The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations that indicate that this Consent Decree is inappropriate, improper, or inadequate. Plaintiffs/Counterdefendants consent to the entry of this Consent Decree without further notice.

43.      If for any reason this Court should decline to approve this Consent Decree in the form presented, this agreement is voidable at the sole discretion of any Party and the terms of the agreement may not be used as evidence in any litigation between the Parties.

## XVIII. SIGNATORIES/SERVICE

44.     Each undersigned representative of a Plaintiff/Counterdefendant and the Assistant Attorney General, U.S. Department of Justice, Environment and Natural Resources Division, or his/her designee certifies that he or she is authorized to enter into the terms and conditions of this Consent Decree and to execute and bind legally such Party to this document.

45.     Each Plaintiff/Counterdefendant agrees not to oppose entry of this Consent Decree by this Court or to challenge any provision of this Consent Decree, unless the United States has notified Plaintiffs/Counterdefendants in writing that it no longer supports entry of the Consent Decree.

46.     Each Plaintiff/Counterdefendant shall identify, on the attached signature page, the name and address of an agent who is authorized to accept service of process by mail on behalf of that Party with respect to all matters arising under or relating to this Consent Decree. Plaintiffs/Counterdefendants agree to accept service in that manner and to waive the formal service requirements set forth in Rule 4 of the Federal Rules of Civil Procedure and any applicable local rules of this Court, including but not limited to, service of a summons.

## XIX.   FINAL JUDGMENT

47.     Upon entry of this Consent Decree by the Court, this Consent Decree shall constitute the final judgment between and among the United States and Plaintiffs/Counterdefendants.

SO ORDERED this 3rd day of January, 2018.

UNITED STATES DISTRICT JUDGE

Signature Page for Consent Decree Regarding San Mateo Mine Site

FOR THE UNITED STATES OF AMERICA:

Dated: 9/21/17

JONATHAN BRIGHTBILL
Deputy Assistant Attorney General
Environment and Natural Resources Division

Dated: 9/22/17

EMILY C. POWERS
ASIA MCNEIL-WOMACK
Trial Attorneys
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
Phone: (202) 616-3168
Fax: (202) 616-6584
Email: emily.powers@usdoj.gov

Dated: 9/22/17

ERICA ZILIOLI
SIMI BHAT
Trial Attorneys
Environmental Defense Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
Phone: (202) 514-6390
Fax: (202) 514-8865
Email: erica.zilioli@usdoj.gov

27

JAMES D. TIERNEY
Acting United States Attorney

Dated: **8-22-17**

MANNY LUCERO
Assistant United States Attorney
District of New Mexico
P.O. Box 607
Albuquerque, NM 87103
Phone: (505) 224-1467
Email: manny.lucero@usdoj.gov

Signature Page for Consent Decree for EPA Regarding San Mateo Mine Site

Dated: _1 Aug. 2017_

CARL EDLUND, P.E.
Director
Superfund Division
U.S. Environmental Protection Agency Region VI
1445 Ross Avenue, Suite 1200
Dallas, TX 75202

Dated: _25 July 2017_

PAMELA TRAVIS
Assistant Regional Counsel
U.S. Environmental Protection Agency, EPA
Region VI
1445 Ross Avenue, Suite 1200
Dallas, TX 75202

Signature Page for Consent Decree for USDA/USFS Regarding San Mateo Mine Site

Dated: _8/10/2017_

KENNETH PAUR
Acting Regional Attorney
USDA Office of the General Counsel
740 Simms. St. #309
Golden, CO 80401

Signature Page for Consent Decree for EPNG Regarding San Mateo Mine Site

FOR EPNG:

Dated: 3-4-17

Name _____
President

APPROVED
AS TO FORM
_____
DATE

Title _____
2 North Nevada Ave #968
Address _____
Colorado Springs, CO 80903
Address _____
719-667-7528
Phone _____

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name: Daniel Schnee

Title: Assistant General Counsel

Address: 2 North Nevada #954
Colorado Springs, CO 80903